STEVEN G. KALAR
Federal Public Defender
NED SMOCK
Assistant Federal Public Defender
555 - 12th Street
Suite 650
Oakland, CA 94607-3627
Telephone:  (510) 637-3500

Counsel for Defendant FORD

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANTOINE FORD, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR-08-558 PJH <br><br> ANTOINE FORD'S DISPOSITIONAL MEMORANDUM <br><br> Date:  March 19, 2014 <br> Time:  1:30 p.m. <br> Court: Hon. Phyllis J. Hamilton |

     Antoine Ford will be before the Court on March 19, 2014 for admission and disposition on the pending petition charging violations of the terms of his supervised release.  The parties and United States Probation have agreed that Mr. Ford will admit to having committed a new law violation – he was convicted in Alameda County of serving as an accessory to a burglary.  This is a Grade B violation and Mr. Ford fit in criminal history category VI at the time of the underlying offense.  Accordingly, the Chapter 7 advisory guidelines call for a sentence of 21-27 months.  The statutory maximum penalty for this violation is 24 months.  United States Probation and the government take the position that a sentence of 21 months is appropriate.  Mr. Ford does not dispute that a prison sentence is warranted.  His sole request is that he receive a sentence slightly below the non-binding guideline range for the reasons set forth herein.

DEF'S DISPOSITIONAL MEMO
*U.S. v. FORD, NO. CR-08-00558 PJH*         1

Mr. Ford spent the last five months of his 51-month underlying sentence at the halfway house in Oakland. While at the halfway house, he found work at an auto detail shop in Oakland. However, because the work was sporadic and hours unpredictable, halfway house staff ultimately prohibited him from working there. Upon his release, Mr. Ford started seeking work – he took advantage of employment resources through United States Probation, registered as a temp through Manpower, and had an interview scheduled at a meat market in Oakland. In the meantime, he performed community service with the non-profit organization Healthy Oakland.

On the night of November 25, 2013 a resident of a four-unit apartment building in Berkeley called the police to report that a window on a glass entrance door to his neighbor's apartment had been broken and that an individual was in front of the building behaving suspiciously. The resident reported to police that after he heard glass breaking, he saw an individual he later identified as Mr. Ford go inside the door for less than a minute before getting into a Ford Focus driven by another individual and leaving. Police arrived and spoke with both the witness and the resident of the apartment associated with the broken door. Accessing this apartment from the front door entrance would require climbing stairs to the third floor. The witness who called the police testified at the preliminary examination in Alameda County that he did not hear the intruder climb the stairs and did not believe he would have had time to do so during the seconds he was inside the building. The resident of the apartment with the broken door had been asleep, reported no contact with any intruders, and reported that nothing had been stolen from his apartment. After the police spoke with these individuals, they left the scene.

Approximately one hour later, the same Ford Focus returned to the area of the apartment building. The resident who had made the initial call saw the passenger, whom he believed was Mr. Ford, get out and walk away from the vehicle. The witness contacted the police again. Berkeley Police responded and detained the driver, who was identified as Antonio Perry. Police located a rifle in Mr. Perry's car. Mr. Ford was not in the car. Police later located him several blocks away and brought him to the scene, where he was identified by the witness and arrested.

Both Mr. Ford and Mr. Perry were prosecuted in Alameda County. Mr. Perry pled guilty to possessing the rifle in his car and was sentenced to a term of 16 months in prison. Mr. Ford pled guilty to being an accessory to a burglary and was sentenced to time served and five years of probation. At the time, Mr. Ford had been in custody for a total of 79 days. Mr. Ford was subsequently held on the instant supervised release violation warrant and brought to federal court to be arraigned on the petition.

As set forth above, the applicable Chapter 7 guideline range is 21-27 months. It is important to remember that this Court is not required to follow the advisory guidelines here. Because Chapter 7 contains policy statements rather than strict guidelines, even before *Booker* the sentencing ranges set forth therein are "merely advisory and are not binding upon the sentencing judge," who is "free to reject the suggested sentencing range....." *United States v. Garcia*, 323 F.3d 1161, 1164 (9th Cir. 2003) (internal citations omitted). Application of a Grade B range of 21-27 months in prison would be overly harsh in this case.

Mr. Ford is prepared to accept a comparatively lengthy sentence of 18 months in prison. Imposition of a sentence that is three months lower than that suggested by the Chapter 7 guidelines is appropriate for a number of reasons. First, it is important to recall the manner in which the case was resolved in the jurisdiction handling the prosecution of the charges that serve as the basis for this petition. An 18 month violation sentence is exponentially higher than the sentence Mr. Ford received in Alameda County for the actual offense conduct. Second, a 21-month sentence would be only three months less than the maximum sentence that could be imposed for a violation given Mr. Ford's underlying crime of conviction. Third, an 18-month sentence would allow this Court to impose three more months of supervised release following Mr. Ford's release than if he is sentenced to 21 months. If Mr. Ford is sentenced to 21 months incarceration, the maximum term of supervised release that can be imposed to follow would be 15 months, since the maximum term is 36 months less any custody time imposed. However, if

the sentence is 18 months, an 18 month term of supervised release can be imposed.

Finally, imposition of a sentence of 18 months would be the functional equivalent of imposing a 21 month sentence while allowing Mr. Ford to receive credit for the time he has been in custody since his arrest. Because Mr. Ford had finished serving his state sentence at the time he was brought into federal custody, an order from this court that Mr. Ford's supervised release violation sentence be run concurrent to that state sentence would have no practical effect. The way to accomplish this purpose would be to reduce the 21 month sentence recommended by United States Probation and the government by the amount of time Mr. Ford served prior to being brought to federal court. Mr. Ford was in custody for 79 days, or more than 2 and one half months. A sentence of 18 months would ensure that Mr. Ford will have served approximately the total equivalent of a 21-month sentence by the time he is released from custody.

Mr. Ford believes that finding employment is the key to his success in the community. He will redouble his efforts to find work and continue to seek assistance from United States Probation after his release from custody. Accordingly, the appropriate sentence here is 18 months incarceration to be followed by 18 months of supervised release.

Dated: March 12, 2014

                                                  Respectfully submitted,

                                                  STEVEN KALAR
                                                  Federal Public Defender

                                                  /s/ Ned Smock

                                                  NED SMOCK
                                                  Assistant Federal Public Defender